

David M. Fry
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0705 - Direct
dfry@shawkeller.com

September 25, 2019

**BY CM/ECF AND HAND DELIVERY**
The Honorable Maryellen Noreika
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

    Re:    *Best Med. Int'l, Inc. v. Varian Med. Sys., Inc., et al.*, C.A. No. 18-1599-MN

Dear Judge Noreika:

Defendants Varian Medical Systems, Inc. and Varian Medical Systems AG (collectively, "Varian") submit this letter brief to address two pending disputes between Varian and plaintiff Best Medical International, Inc. ("BMI"):

1. Varian's proposal for and BMI's refusal to agree to a reasonable schedule for the reduction of asserted claims and prior art; and

2. BMI's refusal to produce discovery including source code for BMI's own products that it contends practice the claimed inventions ("practicing products").

For the reasons set forth below, Varian respectfully requests that the Court (1) amend the scheduling order to include Varian's proposed deadlines to narrow the case, and (2) order BMI to promptly produce source code and other discovery for all BMI practicing products.

    **Claim Narrowing**

On August 30, Varian sent BMI a proposed schedule to narrow the asserted claims and prior art references in this action. On September 10, Varian provided BMI with a draft proposed order amending the case schedule to include deadlines for the reduction of asserted claim and prior art references. On September 16, BMI responded that it would not agree to *any* schedule narrowing the asserted claims in this litigation.

Courts in this District routinely impose reasonable limits on the number of claims a party may assert. *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 918 F. Supp. 2d 277, 282 (D. Del. 2013) ("In this jurisdiction, limiting . . . the number of patent claims a party may assert is well recognized."); *Confluent Surgical, Inc. et al v. HyperBranch Medical Technology, Inc.*, C.A. No. 17-688-LPS-CJB (D. Del. Oct. 30, 2017) (requiring a seven-patent case to be narrowed to 30 claims—*i.e.*, 4 to 5 claims per patent—by the initial infringement contentions) (attached as **Exhibit B**); *Ethicon LLC et al. v. Intuitive Surgical, Inc. et al.*, C.A. No. 17-871-LPS-CJB, D.I. 68 (D. Del. Dec. 19, 2017) (limiting plaintiff to 7 to 8 asserted claims per patent for initial infringement contentions, and 4 to 5 asserted claims per patent before the start of *Markman* briefing) (attached as **Exhibit C**). This common-sense approach to patent-case management promotes judicial efficiency—in particular, for *Markman* proceedings and dispositive motions—and prevents parties from burying their core and true contentions under indiscriminate assortments of claims and defenses throughout the litigation. *Cf. In re Katz Interactive Call Processing Patent Litig.*, 639

SHAW KELLER LLP

The Honorable Maryellen Noreika
Page 2

F.3d 1303, 1313 (Fed. Cir. 2011) (claim narrowing serves a "district court's need to manage the cases before it and the 'strong public interest in the finality of judgments in patent litigation'").

BMI's scattershot contentions underscore the need for a concrete claim narrowing schedule here. Varian gave BMI access to the source code for Varian's accused products since August 13, 2019. A week after it received access, on August 19, 2019, BMI disclosed a list of 82 asserted claims across the four patents-in-suit but said it needed more time to prepare infringement contentions for its asserted claims. After Varian asked that BMI narrow its asserted claims and requested a hearing on this matter, BMI—seeming to acknowledge that its list of 82 asserted claims was overbroad and not in good faith—asserted 37 claims in its August 30, 2019 infringement contentions. But 37 asserted claims is too many for a four-patent case, and claim narrowing cannot continue to proceed in such a piecemeal and unstructured fashion. Instead, Varian respectfully requests that the Court adopt a schedule to ensure a meaningful and orderly process for paring down the issues in this case.

BMI should further reduce its claims before *Markman* proceedings. At present, BMI asserts 15 claims from the '283 patent, 12 claims from the '096 patent, and 5 claims each from the '175 and '490 patents. The number of asserted claims directly impacts the number of terms that have to be construed. *See, e.g.*, *Ethicon LLC et al. v. Intuitive Surgical, Inc. et al.*, C.A. No. 17-871-LPS-CJB, D.I. 102 (D. Del. May 23, 2018) (identifying 20 terms for construction where court had set a pre-*Markman* limit of 30 claims) (attached as **Exhibit D**); *Nuance Communications, Inc. v. MModal LLC et al.*, C.A. No. 17-1484-MN-SRF, D.I. 104 (D. Del. Aug. 3, 2018) (identifying 22 terms for construction with pre-*Markman* limit of 23 claims) (attached as **Exhibit E**); *Confluent Surgical, Inc. et al v. HyperBranch Medical Technology, Inc.*, C.A. No. 17-688-LPS-CJB, D.I. 75-1 (D. Del. Oct. 30, 2017) (identifying 43 terms for construction with pre-*Markman* limit of 30 claims) (attached as **Exhibit F**). Applying similar ratios to the total of 37 claims presently asserted here, it is likely that there will be at least 20 to 30 disputed claim terms for construction, which makes it extremely difficult for the parties to agree on and submit a manageable list of disputed terms for consideration at *Markman* hearing.

For these reasons, Varian respectfully asks the Court to enter Varian's proposed claim and prior-art narrowing schedule (attached hereto as **Exhibit A**) that is consistent with other schedules entered in this District. *See, e.g.*, *VLSI Tech. LLC v. Intel Corp.*, C.A. No. 18-966-CFC-CJB, D.I. 136 (D. Del. Apr. 22, 2019) (limiting plaintiff to 25 claims before *Markman* briefing) (attached as **Exhibit G**); *Nuance Communications, Inc. v. MModal LLC et al.*, C.A. No. 17-1484-MN-SRF, D.I. 82 (D. Del. Aug. 3, 2018) (limiting plaintiff to 23 claims before *Markman* briefing) (attached as **Exhibit H**); *Noven Pharmaceuticals, Inc. v. Alvogen Pine Brook LLC et al.*, C.A. No. 17-01429-LPS, D.I. 198 (D. Del. Aug. 13, 2018) (limiting plaintiff to 12 claims before *Markman* briefing) (attached as **Exhibit I**); *AT&T Intellectual Property I, L.P. et al. v. Cox Comms., Inc. et al.*, C.A. No. 14-1106-GMS, D.I. 87 (D. Del. Feb. 3, 2015) (limiting plaintiffs to 12 claims before *Markman* briefing) (attached as **Exhibit J**).

## BMI's Refusal to Produce Practicing-Products Source Code and Discovery

BMI contends that "Best, through Best Nomos®, sells an external beam treatment planning system, Corvus®, that incorporates embodiments of the patented technologies of the '283 Patent, the '096 Patent, the '175 Patent, and the '490 Patent." D.I. 42 (First Amended Complaint or

SHAW KELLER LLP

The Honorable Maryellen Noreika
Page 3

"FAC") ¶ 6; *see also id.* at ¶¶ 27, 29 (same).  BMI also asserts that "tools within ActiveRx$^{TM}$ embody inventions of the patents-in-suit."  BMI's Resp. to Interrog. 5 (attached as **Exhibit K**).  Notwithstanding those assertions, BMI has refused to provide source code or any other discovery for the Corvus and ActiveRx practicing products, claiming that such discovery is irrelevant.

Varian must be able to test BMI's contentions regarding its purportedly practicing products, and BMI cannot refuse to provide source code and other discovery necessary for Varian to do so.  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  BMI put its own products at issue by affirmatively asserting that they practice the asserted patents.  BMI presumably makes these assertions in order to bolster its remedies case, including its request for lost profits, FAC ¶¶ 296, 299, 303, 307, and its claim of irreparable harm and corresponding request for permanent injunction, FAC ¶¶ 91, 105, 115, 150, 168, 179, 207, 224, 235, 261, 279, 290, 306.  Of course, to properly prepare its defenses, Varian must be allowed to test the veracity of BMI's assertions, which is not possible without the requested discovery regarding the allegedly practicing products.  In addition to BMI's requests for lost profits and permanent injunction, such practicing-products discovery may also be relevant to the circumstances of any hypothetical negotiation for a reasonable royalty determination, as well as any allegations by BMI regarding secondary indicia of non-obviousness by BMI.

BMI cannot assert that its own products embody and practice the claimed inventions and at the same time deprive Varian of discovery relevant to these assertions.  Just as BMI has had access to Varian's source code for the accused products to afford BMI the opportunity to substantiate its allegations of infringement, the Court should order BMI to provide Varian access to the Corvus and ActiveRx source code so that Varian can evaluate whether BMI's practicing-products assertions are factually supported.  Indeed, as BMI argued in response to Varian's first motion to dismiss, "much of the proof [of the alleged infringement] will be within Varian's source code and related confidential technical materials."  The same is true of BMI's practicing products: much of the proof of whether they in fact embody the asserted patent claims will be within BMI's source code and related technical materials for Corvus and ActiveRx.  There is no justification for BMI's refusal to provide this discovery.

### Conclusion

For the reasons set forth above, Varian respectfully asks the Court to (1) amend the scheduling order to include Varian's proposed deadlines for the reduction of asserted claims and prior art; and (2) order the immediate production of BMI's source code and related confidential technical materials for BMI's alleged practicing products, including Corvus and ActiveRx.

Respectfully submitted,

*/s/ David M. Fry*

David M. Fry (No. 5486)

cc: Clerk of the Court (via hand delivery)
    All Counsel of Record (via CM/ECF and e-mail)