# EXHIBIT E

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


RELIANT PHARMACEUTICALS, INC., )
                                )
            Plaintiff,          )
                                ) C.A. No. 06-774
v.                              )
                                )
PAR PHARMACEUTICAL, INC.,       )
                                )
            Defendant.          )



                Friday, March 7, 2008
                11:30 a.m.
                Courtroom 4B


                844 King Street
                Wilmington, Delaware


BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.
         United States District Court Judge


APPEARANCES:

        MORRIS NICHOLS ARSHT & TUNNELL
        BY:  JACK BLUMENFELD, ESQ.

                -and-

        KIRKLAND & ELLIS
        BY:  CHRISTINE WILGOOS, ESQ.

                Counsel for the Plaintiff

2

APPEARANCES (Cont'd:)

       YOUNG CONAWAY STARGATT & TAYLOR
       BY:  KAREN L. PASCALE, ESQ.

            -and-

       FROMMER, LAWRENCE & HAUG
       BY:  JOHN G. TAYLOR, ESQ.

           Counsel for the Defendant

3

```
 1            THE COURT:  Next we'll take

 2   Reliant and Barr.  All right.  The dispute I

 3   have been waiting for.  Do you want to announce

 4   your appearances.

 5            MR. BLUMENFELD:  Thank you, Your

 6   Honor.  Jack Blumenfeld again for Reliant

 7   Pharmaceutical with Christine Willgoos from

 8   Kirkland & Ellis.

 9            THE COURT:  Good morning.

10            MS. PASCALE:  Good morning, Your

11   Honor.  Karen Pascale from Young Conaway and I

12   would like to introduce John Taylor from

13   Frommer, Lawrence & Haug, the New York office.

14            MR. TAYLOR:  Good morning Your

15   Honor.

16            THE COURT:  Okay.  Actually you

17   have a pretty straightforward dispute.  I have

18   one question about the motion to compel

19   documents relating to consumption, disposal or

20   destruction of Par samples.

21            I think what I read was that there

22   have been replacement samples provided and can

23   somebody address that.

24            MS. WILLGOOS:  Good morning, Your
```

4

1    Honor.   Reliant has requested two types of

2    samples from Par.   Their submission samples

3    which is the product that they're seeking

4    approval for in this ANDA as well as what we

5    have been calling experimental batches which are

6    comparative examples used in their ANDA that

7    they have not submitted specifically for

8    approval but are referenced in the ANDA.

9              It's come to our attention Par

10   recently informed us that they inadvertently

11   produced a sample of an experimental batch to us

12   and represented that it was a submission batch.

13   They have now replaced that and have produced

14   the submission batch, Your Honor.

15             THE COURT:  So this has kind of

16   gone away?

17             MS. WILLGOOS:  It's not gone away,

18   Your Honor.  Par's internal documents indicate

19   that there has an ongoing project at Par to

20   discard or destroy samples that were no longer

21   necessary.  Some of those appear to have been

22   for pathonomic samples that they have not

23   produced to us, so we're seeking documents to

24   determine what samples they actually have in

5

1      their possession and to the extent that any are

2      destroyed, the circumstances and dates of such

3      destruction or, you know, consumption or

4      disposal.

5                THE COURT:  All right.  Do you

6      want to answer what their concern is?

7                MR. TAYLOR:  Certainly, Your

8      Honor.  This whole motion is based on Reliant's

9      mistaken and persistent belief that Par has

10     manufactured lots of its proposed ANDA product

11     that are different from the three lots that Par

12     has already produced samples from.  And that

13     they also assume that these other lots that they

14     think exist may have been destroyed or used up.

15            But that belief is based on

16     Reliant's own assumptions and on its misreading

17     of documents that were produced by Par.  And

18     despite Par's best efforts to explain what is a

19     really fairly simple story which is fully

20     supported by Par's documents that there are only

21     three lots of its submission product made, they

22     have produced samples from all three, and that

23     none were destroyed.

24            The facts are here Par had

1   produced samples from the each of the only three

2   lots it produced of its proposed ANDA product

3   and that was produced last April.

4            They also produced documents last

5   April that detailed how these three lots were

6   made.

7            Par has not destroyed any samples

8   and we have represented that to Reliant, but

9   even if it had, it really wouldn't make a

10  difference here, they made three lots, they

11  could have destroyed 90 percent of it as long as

12  they kept enough to produce to Reliant in this

13  litigation which they have enough for their FDA

14  requirements.  It wouldn't have matter if they

15  destroyed the rest, but they didn't.  We still

16  have plenty of samples from these three lots and

17  if you can tell us why you need more than the

18  original sixty that you asked for, we would be

19  happy to provide those.  They haven't said why

20  they need anymore.

21           What's happened here is they

22  refuse to believe that Par has samples, capsules

23  of produced ANDA product that come from other

24  than these three lots.  And in spite of our

7

1    representations and documents to the contrary,

2    they're now demanding that we produce documents

3    explaining what happened to each and every

4    capsule that was made in these three large, 325,

5    425 milligram for pathanome and wants to know

6    what did you give to the FDA, what did you do

7    in-house testing on, what went to clinical

8    trials, they want all this information which is

9    not arguably relevant to this case.

10              Par could have destroyed and used

11   up most of these three lots as long as it had

12   some left to produce.  It has, it produced

13   documents as to how they were made.  These

14   documents that they're asking for on the

15   consumption, all the post manufacture, what

16   happens to these capsules later is not going to

17   answer the question which we seem to be doubting

18   did you make more than these three lots.

19              THE COURT:  Your representation is

20   you didn't?

21              MR. TAYLOR:  Right, absolutely.

22              THE COURT:  All right.  What I'm

23   going to do is deny the motion, accepting your

24   representation as you set forth in your papers

8

1      and represented here this morning.

2                    MR. TAYLOR:  Yes, Your Honor.

3      Thank you.

4                    THE COURT:  And that will resolve

5      that motion.

6                    Now, while I have you at the

7      podium, interestingly you want to take a

8      30(b)(6) deposition on the contentions of

9      Reliant and they have told you that there is

10     some transcript law, case law that in this

11     district there is a practice that I think I'll

12     put it a little differently than they have

13     argued it, in this district there is a practice

14     that disfavors depositions on contentions in

15     deference to interrogatories.

16                   And you answered there is no local

17     rule, there is other case law that says 30(b)(6)

18     is an appropriate mechanism to delve into the

19     factual basis for a response to a contention

20     interrogatory.

21                   Now, did I pretty much sum that

22     up?

23                   MR. TAYLOR:  I wouldn't

24     characterize it as we are seeking their

1    contentions, I think the factual basis, and if I

2    may --

3               THE COURT:  You're seeking the

4    facts.

5               MR. TAYLOR:  And I can explain why

6    it's a little different than why here, we really

7    are seeking facts that they in response to our

8    contention interrogatories, they have stated

9    facts that they say support their contention

10   interrogatories.  We have their contentions, but

11   they have stated facts in support of those, and

12   we want to explore those in very general terms.

13   We want to explore those fact and the most

14   efficient went way to do it is to sit down with

15   someone who is more knowledgeable with these, we

16   are not seeking -- we have their contentions, we

17   just want the facts that they've identified that

18   they're relying on that support their

19   contentions.

20              THE COURT:  That's the interesting

21   question that you present.  There is fact

22   discovery in an ANDA case; right?  Why do you

23   keep like swooping back trying to get under the

24   contention umbrella?  You have got their

1    contentions, and now you want to have discovery

2    on facts at issue in this case.  Why isn't it

3    just a straight forward 30(b)(6) deposition?

4            MR. TAYLOR:  Well it is.  And

5    perhaps it was unfortunate that we said the

6    factual basis underlying your contentions, using

7    my words, but it's clear that we're looking for

8    factual discovery about certain topics.  And

9    again, as I said, we have served them with

10    contentions, they have given us responses and in

11    those responses to support their contentions,

12    they have identified facts, and those are the

13    facts --

14            THE COURT:  Give me an example --

15    are you satisfied taking it out from under the

16    contention umbrella, which incidentally I

17    actually found a Fifth Circuit case that says

18    you can take 30(b)(6) on beliefs and opinions of

19    the entity, which I don't want to mess this case

20    up with, but it interest me.

21            But let's assume that they are

22    correct that in this district absent some

23    factual circumstance, we prefer that contentions

24    be done by interrogatory, that's been

1    accomplished, now you have the responses and now

2    you're in fact discovery, are you comfortable

3    just saying we want fact discovery and this

4    30(b)(6) is one of the ones you're allotted in

5    the scheduling and move forward.

6              MR. TAYLOR:  Yes, Your Honor, it's

7    the fact, again, we said underlying their

8    contentions, but it's the facts about those

9    topics is what we're looking for, the facts that

10   --

11             THE COURT:  Give me an example of

12   the kind of question on the fact issue that

13   you're trying to describe to me would be --

14             MR. TAYLOR:  For example, one of

15   our 30(b)(6) topics is the factual contentions

16   underlying your -- the factual basis underlying

17   your contention -- perhaps we should have used

18   some other phrase that the secondary

19   considerations of nonobviousness apply, or

20   support your theory that -- support the validity

21   of the patents, in response to that, they named

22   the usual secondary indicia, commercial success,

23   failures of others, long felt need and they also

24   stated there is a direct nexus between these

1    second indicia and our product, and the support

2    of each of these second indicia, for example,

3    failure of others, long felt need, they went

4    then on to if long felt need supports, and then

5    under that they made statements like others have

6    failed.  We have no evidence that anybody else

7    has ever successfully produced a product like

8    that.

9                THE COURT:  Why do you have expert

10   discovery on their expert as opposed to a

11   30(b)(6) representative deposition on facts

12   underlying a contention?

13               MR. TAYLOR:  They have put in

14   play, they have -- Reliant has represented that

15   they are not aware of evidence, or that they

16   have evidence to support each of these or they

17   have a factual basis for supporting each of

18   these, we simply want to know what that is.

19               THE COURT:  As long as you can get

20   it, but if you have to get it as part of the

21   underlying support for their expert's opinion,

22   why wouldn't that satisfy your need?

23               MR. TAYLOR:  Well, at this point

24   Reliant itself has already formed these opinions

13

1    based on these facts, we want to know what these

2    facts are now so we can begin preparing our

3    defense rather than waiting while we're in fact

4    discovery we could find out, what evidence, what

5    investigation did you undergo to support these

6    statements you made, long felt need, they talk

7    about all these doctors have prescribed this as

8    their first choice.

9              THE COURT:  Why don't you serve an

10   interrogatory?

11             MR. TAYLOR:  This is where this

12   came from, we served an interrogatory.

13             THE COURT:  No, for supplemental

14   response.

15             MR. TAYLOR:  We have, and earlier

16   in this case we did.  We had a dispute over

17   their initial response to our infringement

18   interrogatory, we got all the way to the point

19   of briefing it, the last week briefing was done

20   as we withdrew it on based on the representation

21   that they would supplement, and they did, but in

22   these cases they give very general statement of

23   fact that support.  We can go back and say we

24   need more detail and they will come back and

1   give us more detail, we'll say that's not

2   enough, we'll end up back in motion practice.

3   Now that we have their factual contention, we

4   have documents they produced, if they produce a

5   knowledgeable witness we can sit down with the

6   witness and question the person, we know what

7   the issues are that we are going to ask about,

8   it's not overly burdensome for their witness to

9   answer those, it's a more efficient way of doing

10   it instead of going back and forth.

11                   THE COURT:  All right.  Thank you.

12                   MS. WILLGOOS:  Your Honor, first

13   of all, we agreed with you that particularly

14   with respect to infringement and validity, our

15   factual bases and contentions are primarily

16   appropriate subject matter for the expert report

17   and not for a deposition.

18                   In addition, we have provided them

19   with both interrogatory responses that they have

20   never asked us to supplement since we did that

21   until their opposition to this motion, they

22   never in the five months since we served them at

23   any time indicated that those were lacking in

24   any way.

1           In addition, we are providing them

2     with a 30(b)(6) witness regarding sales,

3     marketing, that's occurring next week.  We have

4     already provided them with a 30(b)(6) witness

5     regarding Reliant's basis for bringing suit, and

6     have pursued investigation.

7           And so the discovery that they

8     claim that they need they already have or will

9     get in the next several weeks in the form of

10    interrogatories and appropriate deposition

11    topics that are limited specifically to facts

12    and not to Reliant's contentions and legal

13    conclusions.

14           THE COURT:  All right.  Thank you.

15    She says you're going to get everything you are

16    asking for, just not in I guess the form --

17           MR. TAYLOR:  Well, I guess the

18    topic she identified, if I go to one, one of the

19    categories, 30(b)(6) which would be the

20    infringement was the main concern there again

21    was what did they know at the time, what

22    investigation did they do at the time they filed

23    their complaint.  In fact, yes, we do have some

24    other 30(b)(6) categories that should cover that

1  for that one topic.  Another topic, it's a

2  little bit different, we also have a 30(b)(6)

3  topic that concerns the factual basis for the

4  allegation that this is an exceptional case that

5  warrants attorneys' fees under Section 3 USC

6  285.  The information they're seeking here is

7  very limited and there would be no burden on

8  Reliant to prepare a witness for this.  Willful

9  infringement is the most common basis for

10  finding an exceptional case.

11        Here there is case law that filing

12  an ANDA cannot be the basis for willful

13  infringement.  We simply want Reliant to tell us

14  what acts has Par committed, that you think Par

15  has committed that would raise the level of

16  willful infringement or what other conduct do

17  you think Par has engaged in that would justify

18  an exceptional case so that way we know what

19  we're defending because right now we have no

20  information.

21        Interestingly in our opposition

22  papers, we cited a case, Brocko from New Jersey.

23  In distinguishing that case in their reply brief

24  they actually confirm why this topic is

1    appropriate for 30(b)(6).  There it was a false

2    advertisement case as Reliant characterized it,

3    a false advertising case.  The plaintiff did not

4    identify the statements that were made by the

5    defendant that they thought resulted in false

6    advertisement, so a 30(b)(6) is appropriate to

7    tell them what statements did you make.

8            Here, all we're asking for is what

9    conduct, what do you think we did that would

10   rise to the level of an exceptional case.  We

11   know what we're defending against.  We don't

12   have anything yet.  In this sort of limited

13   topic, 30(b)(6) is an appropriate efficient way

14   of doing it and their analysis of the case

15   supports that.

16           As far as I can give other

17   examples of the factual statements made in their

18   responses, so the factual -- again, and the

19   responses, the contention interrogatories that

20   are not the couple of topics that my colleague

21   identified which kind of went, for the most part

22   went towards our infringement 30(b)(6) topic,

23   but again, I have already talked about the

24   secondary consideration topic, they have

1    identified underlying facts and we want to know

2    what evidence, what do you have that supports,

3    for example that doctors are making this their

4    primary choice, that for example, and also for

5    long felt need -- I'm sorry, for failure of

6    others that no one else has been able to come up

7    with this product, so there is a failure of

8    others, other than saying that our ANDA shows

9    that that is true, because we -- they say we're

10   unable to come up with another formulation.

11            Another of our topics seeks the

12   factual basis for that belief that their

13   product, their commercial embodiment falls

14   within the '580 patent that's at issue here.

15            Again, this was stated, this

16   itself stated that the Ritheral product, our

17   commercial embodiment, falls within the patent,

18   we stated as a fact in support of their

19   secondary considerations interrogatory response.

20            They must have had a belief or

21   they had some basis for believing that their

22   product falls within the '580 patent, they have

23   data about the characteristics about its

24   performance that show that it falls within the

1    limitations of the patent.  Certainly there must

2    be technical people at Reliant who can testify

3    about here is the evidence we have had about how

4    our drug performs, here is the evidence that we

5    have about its characteristics and describe and

6    explain to us what this document, what this

7    evidence, again, it's something they have

8    introduced in response to a contention

9    interrogatory as a fact.

10               And we need, although we can

11   certainly get an expert's opinion on why this

12   evidence is warranted, we should be able to

13   investigate what evidence do you have, what

14   other evidence might you have that can

15   contradict or support your belief that this drug

16   falls within the '580 patent.  We believe in

17   these circumstances which we have already

18   submitted contention interrogatories and facts

19   have been identified, we now should be able to

20   explore the basis for the factual statements

21   that they make.

22               THE COURT:  All right.  Thank you.

23               Okay.  With regard to the

24   plaintiff's motion, Reliant's position motion

1    for a protective order regarding Par's notice of

2    deposition to Reliant pursuant to Rule 30(b)(6)

3    which is Docket Item 172, I find that the

4    requested deposition is in this context of

5    inquiring about the contentions that Reliant

6    asserts in the litigation.  I think that that's

7    clear both from the papers and from the

8    presentation here this morning.

9           30(b)(6) depositions I think can

10   be a mechanism to a party to ascertain the

11   contentions of the opponent because I think

12   30(b)(6) depositions can be used to probe for

13   beliefs and opinions held by a party or the

14   entity that is a party.

15           I think that Reliant has correctly

16   stated in its papers that in this district there

17   is a preference that contention discovery be

18   conducted by interrogatory even when factual

19   information is sought, and then that information

20   can be further probed in the course of the other

21   available mechanisms for discovery.

22           Having found that this is

23   contention discovery that's sought, even though

24   it's in a factual nature, I'm going to deny the

1    motion being persuaded that this -- our district

2    practice of deferring to interrogatories is

3    appropriate in the circumstances of this case.

4    So the motion will be granted for the protective

5    order on that notice of deposition.

6              I should also add that with the

7    circumstances of this case I think it's clear

8    that the information sought is available in

9    several other procedures available under the

10   discovery rules.

11             Okay.  I think that closes your

12   two applications out.

13             MR. BLUMENFELD:  It does, Your

14   Honor.

15             MR. TAYLOR:  I'm not raising this

16   trying to argue it, but we have had a motion for

17   disqualification of former lawyers.  I just want

18   to make sure it was on your Your Honor's radar

19   screen.

20             THE COURT:  Absolutely.  I'm sure

21   you have heard this before, I don't know if

22   everyone has heard it, I never lose a motion on

23   the screen.  I know they're there, in fact I get

24   a weekly report from the chamber staff, and I

22

1    sometimes don't move to certain motions

2    because -- not because I don't know they're

3    there or because I don't have the energy to

4    attend to them, there is usually something else

5    behind my holding back.

6                   And so I'm aware of the

7    disqualification motion, I know I heard it back

8    in November or something the first time or

9    whenever it was, but I'm holding it and you'll

10   probably hear from me in the future on that

11   motion.

12                   You know, not to talk about that

13   motion, I was holding an opinion, and I wanted

14   to hold it longer, I'm just anxious to see the

15   Federal Circuit on this double patent in the

16   pharmaceutical cases.  I just know something has

17   got to be coming out of there.

18                   But sometimes it's hard to explain

19   that to the parties who are anxious to get a

20   decision.  You think there is going to be an all

21   four corners dropping of a bomb, and if you -- I

22   had in the Lipitor case on written description,

23   and then I didn't hold it because everybody

24   wanted Lipitor out and sure enough they decided

1    it and then told me what I did wrong by

2    predicting what they might do, so sometimes

3    that's going on, too.  But don't ever feel that

4    radar has broken, if you do, it's good to bring

5    it.  I do appreciate that.  You can be sure that

6    we have it on the scope, but I'm well aware of

7    the motion, I have it in mind, it keeps me up

8    some nights even if that makes you feel any

9    better.

10            MR. TAYLOR:  In that same vein,

11   Your Honor, just a reminder that Barr also has a

12   motion that's been pending since January to

13   compel the discovery of foreign inventors who

14   are also trying to get through the procedure --

15            THE COURT:  It's on the list as I

16   came to this.  As a matter of fact, the group

17   before you had two motions to dismiss.  I mean,

18   I know about them, too, but all in time.

19            MR. TAYLOR:  Thank you, Your

20   Honor.

21            THE COURT:  But you know, again,

22   don't ever be afraid to bring it to my

23   attention, that can also be helpful, too.  I'm

24   never offended when someone says we want to

24

1        remind you this is pending.

2                        Thank you.

3                        (Court recessed at 11:50 a.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    State of Delaware      )
                            )
2    New Castle County      )

3

4                  CERTIFICATE OF REPORTER

5

6          I, Dale C. Hawkins, Registered Merit
     Reporter and Notary Public, do hereby certify that
7    the foregoing record is a true and accurate
     transcript of my stenographic notes taken on March 7,
     2008, in the above-captioned matter.

8

9          IN WITNESS WHEREOF, I have hereunto
     set my hand and seal this 14th day of March, 2008 at
10   Wilmington.

11   _____
                         Dale C. Hawkins, RMR
12

13

14

15

16

17

18

19

20

21

22

23

24